IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTIRCT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MOSCONI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| | ) | |
| ATLAS INTERNATIONAL LIFT | ) | |
| TRUCKS, INC. | ) | |
| | ) | |
| Defendant, | ) | |

### COMPLAINT AT LAW

Plaintiff, DANIEL MOSCONI by his attorney, STEVEN C. FUOCO and complaining of defendant, ATLAS INTERNATIONAL LIFT TRUCKS, INC., pleading hypothetically and in the alternative, states as follows:

### NATURE OF ACTION

1. This action seeks recovery for defendant's violation of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. as amended when firing plaintiff on or about December 31, 2008.

2. This action brought pursuant to 29 U.S.C. § 1132(a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA") seeks recovery for defendant's violation of 29 U.S.C. § 1140 when terminating plaintiff's employment to prevent plaintiff's continued participation in defendant's health care and deferred compensation plans.

3. This action is brought pursuant to Illinois common law governing breaches of contract concerning plaintiff's written August 25, 2008 employment

agreement with defendant and plaintiff's written deferred compensation plan for years 2000 to the present time.

## JURISDICTION AND VENUE

4. Original jurisdiction based upon a federal question is granted by 28 U.S.C. § 1331 and exclusive jurisdiction granted by 29 U.S.C. § 1132(e)(1).

5. Supplemental jurisdiction is granted by 28 U.S.C. § 1367

6. Venue in the United States District Court for the Northern District of Illinois, Eastern Division is proper pursuant to 28 U.S.C. § 1391(b) based upon the Schiller Park, Illinois corporate location of defendant and the situs of defendant's violation of the ADA and ERISA.

## COUNT I-ADA VIOLATION

7. On or about June 3, 1983 defendant's predecessor first hired plaintiff to work.

8. Plaintiff subsequently advanced to the position of vice president and general manager with defendant's predecessor.

9. As of October 2006 from various corporate mergers and corporate renaming, defendant employed plaintiff in the position of vice president and general manager.

10. On or about November 2007 plaintiff had medical treatment for kidney stones and subsequently developed an infection of the colon from Clostridium difficile bacteria, otherwise known as "C diff.".

11. Plaintiff made defendant aware of plaintiff's kidney stones treatment and subsequent "C diff." infection.

12. On or about January 10, 2008 defendant took away plaintiff's corporate vice presidency and managerial responsibility because of plaintiff's illness and demoted plaintiff to a regional sales position.

13. Plaintiff could perform the essential functions of his territory sales position with or without reasonable accommodation.

14. Plaintiff sought to engage defendant in interactive communication to determine a plan of reasonable accommodation for plaintiff to perform his territory sales position while plaintiff's C. diff infection ran its course and resolved.

15. By August 2008, interactive communication between plaintiff and defendant had broken down without a plan for reasonable accommodation after defendant threatened plaintiff's employment termination unless plaintiff agreed to a revised written employment contract.

16. Under the exerted pressure of threatened employment loss, defendant obtained plaintiff's signature on a revised written employment agreement dated August 25, 2008 and revised written agreement for deferred compensation also dated August 25, 2008.

17. On or about December 31, 2008, plaintiff first learned that defendant had fired him because plaintiff still could not work without reasonable accommodations.

18. On or about June 23, 2009 plaintiff made his EEOC Charge of Discrimination against defendant.

19. On or about December 28, 2009 plaintiff received service of an EEOC right to sue letter.

20. Plaintiff seeks as relief for defendant's willful ADA violation the remedies of back pay, reinstatement or front pay, punitive damages, prejudgment interest as well as attorney fees and allowable costs, pursuant to 29 U.S.C. § 1205.

## COUNT II-ERISA VIOLATION

21. On or about June 3, 1983 defendant's predecessor first hired plaintiff to work.

22. Plaintiff subsequently advanced to the position of vice president and general manager with defendant's predecessor.

23. As part of plaintiff's position of vice president and general manager, defendant's predecessor provided plaintiff with a written deferred compensation plan and participation in an employee health insurance plan.

24. As of October 2006 from various corporate mergers and corporate renaming, defendant employed plaintiff in the position of vice president and general manager and continued the deferred compensation plan and participation in the employee health insurance plan previously provided to plaintiff.

25. On or about November 2007 plaintiff had medical treatment for kidney stones and subsequently developed an infection of the colon from Clostridium difficile bacteria, otherwise known as "C diff." requiring continued treatment to be paid by defendant's health insurance plan.

26. Plaintiff made defendant aware of plaintiff's kidney stones treatment and subsequent "C diff." infection.

27. On or about January 10, 2008 defendant took away plaintiff's corporate vice presidency and managerial responsibility because of plaintiff's illness and demoted plaintiff to a territory sales position.

28. On and after January 10, 2008 plaintiff continued to receive medical treatment for "C diff." infection at increasing cost to defendant's employee health insurance plan.

29. On or about December 31, 2008, plaintiff learned that defendant has fired him.

30. On December 31, 2008 or before defendant violated ERISA Section 510 (29 U.S.C. § 1140) when firing plaintiff to avoid paying plaintiff vested future deferred compensation as well as avoid paying the increasing costs of plaintiff's continued medical treatment for "C diff." infection.

31. Plaintiff seeks restitution equitable relief including reinstatement or front pay, back pay, deferred compensation plan balance as if plaintiff had remained a plan participant and other employee benefits.

32. Plaintiff seeks prevailing party attorney fees and the costs allowed by 29 U.S.C. § 1132(g)(1).

## COUNT III-CONTRACT BREACH

33. On or about June 3, 1983 defendant's predecessor first hired plaintiff to work.

34. Plaintiff subsequently advanced to the position of vice president and general manager with defendant's predecessor.

35. At plaintiff's advancement, plaintiff entered into a written employment contract dated June 8, 1995 with defendant's predecessor which included a deferred compensation plan.

5

36. As of October 2006 from various corporate mergers and corporate renaming, defendant employed plaintiff in the position of vice president and general manager.

37. Plaintiff and defendant then revised plaintiff's previous written employment contract with a written First Amendment to Employment Agreement dated January 9, 2007 changing plaintiff's deferred compensation plan.

38. On or about November 2007 plaintiff had medical treatment for kidney stones and subsequently developed an infection of the colon from Clostridium difficile bacteria, otherwise known as "C diff.".

39. Plaintiff made defendant aware of plaintiff's kidney stones treatment and subsequent "C diff." infection.

40. On or about January 10, 2008 defendant took away plaintiff's corporate vice presidency and managerial responsibility because of plaintiff's illness and demoted plaintiff to a territory sales position.

41. On or about August 7, 2008, defendant threatened plaintiff's employment termination unless plaintiff agreed to a revised written employment contract.

42. Under the exerted pressure of threatened employment loss, defendant obtained plaintiff's signature on a revised written employment agreement dated August 25, 2008 and revised written agreement for deferred compensation also dated August 25, 2008.

43. Paragraph 6 entitled "TERMINATION OF EMPLOYMENT" of the revised written employment agreement dated August 25, 2008 specified in subpart (b) only five "for cause" reasons that defendant could fire plaintiff from employment, one of which was …" (i) the death, physical or mental disability of the Employee, …"

44. On or about December 31, 2008 plaintiff first learned that defendant fired him from employment.

45. On or before December 31, 2008 defendant breached plaintiff's revised written employment agreement dated August 25, 2008 when firing plaintiff for physical disability.

46. On and after March 31, 2000 defendant or its predecessor breached the written deferred compensation plan of plaintiff by manipulating and miscalculating the net profit of defendant or its predecessor for which defendant assumed its predecessor's liabilities in merger for years 2000 to 2008.

47. Plaintiff seeks compensatory damages in an amount equal to plaintiff's accrued back pay, monetary value of fringe benefits and prejudgment interest as restitution for the breach of plaintiff's revised written employment agreement dated August 25, 2008.

48. Plaintiff seeks compensatory damages in an amount equal to the fairly recalculated net profit of defendant and its predecessor as restitution for years 2000 to 2008 as well as to the present because of defendant's wrongful termination of plaintiff in breach of plaintiff's revised written employment agreement dated August 25, 2008.

49. Plaintiff demands trial by jury.

                Respectfully submitted,

                  /s/ Steven C. Fuoco
                  Steven C. Fuoco
                  Counsel for Plaintiff

Steven C. Fuoco
1055 Golf Avenue
Highland Park, IL 60035
847/432-LAWS (5297)
ARDC No. 6206935